CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
January 13, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Nos. 7:10-CR-17 |
| v. ) | 7:19-CR-25 |
| ) | |
| ) | By: Michael F. Urbanski |
| STEPHEN CORNELL VAUGHN, JR.,) | Senior United States District Judge |
| Defendant-Petitioner ) | |

## MEMORANDUM OPINION

This matter comes before the court on Stephen Cornell Vaughn Jr.'s motions for a sentence reduction filed pursuant to 18 U.S.C. § 3582(c)(1)(A). Vaughn filed a pro se motion on August 17, 2023, ECF No. 112 in 7:10-CR-17; ECF No. 81 in 7:19-CR-25, and the Federal Public Defender filed an amended motion on his behalf on October 9, 2023. ECF No. 117 in 7:10-CR-17; ECF No. 86 in 7:19-CR-25. The government filed a response in opposition on November 3, 2023, and Vaughn filed a reply on December 1, 2023. ECF Nos. 119, 122 in 7:10-CR-17; ECF Nos. 88, 91 in 7:19-CR-25. As discussed more fully below, the court DENIES his motions.[1]

I. Background

On December 21, 2010, Vaughn was sentenced to a term of 120 months to be followed by a 4-year term of supervised release after being convicted of conspiracy to distribute more

---

[1] Vaughn's motions were filed in Criminal No. 7:10-CR-17. However, Vaughn is serving a 168-month sentence in 7:19-CR-25, as well as a consecutive 30-month revocation sentence in 7:10-CR-17. J., ECF No. 79 in 7:19-CR-17; J., ECF No. 111 in 7:10-CR-17. As the government pointed out and Vaughn agreed, resolution of the motions is relevant to both cases and their sentences. See Resp., ECF No. 119 at 3 and Reply, ECF No. 122 at 1–2 in 7:10-CR-17; Resp., ECF No. 88 at 3 and Reply, ECF No. 91 at 1–2 in 7:19-CR-25. Accordingly, the court directed the Clerk to file in Criminal No. 7:19-CR-25 the pleadings that have been filed thus far in Criminal No. 7:10-CR-17. Going forward, the parties should file all relevant pleadings in both cases.

than 5 grams of cocaine base in violation of 21 U.S.C. § 846. ECF No. 67 in 7:10-CR-17. Vaughn was released from custody to begin serving his term of supervision on March 19, 2016. ECF No. 89 in 7:10-CR-17.

On September 4, 2018, a revocation arrest warrant was issued for Vaughn. ECF No. 90 in 7:10-CR-17. Vaughn was cited for several violations of supervised release, including selling drugs that contained heroin, fentanyl, and carfentanil. Vaughn sold bags of heroin marked with a red smiley face to a confidential informant and drugs in similar bags had been linked to multiple overdoses in the Roanoke Valley. Pet. for Writ or Summons, ECF No. 89 in 7:10-CR-17. Vaughn was detained pending a supervised release revocation hearing. Ord., ECF No. 98 in 7:10-CR-17.

On August 29, 2019, Vaughn was charged via information in 7:19-CR-25 with one count of conspiring to possess with intent to distribute and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine; 400 grams or more of a mixture and substance containing Fentanyl; 500 grams or more of a mixture and substance containing a detectable amount of cocaine; and 100 grams or more of a mixture and substance containing a detectable amount of heroin, after twice having been previously convicted of a serious drug felony, all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and 846. Information, ECF No. 32 in No. 7:19-CR-25.

Vaughn pled guilty pursuant to a plea agreement. Plea Agreement, ECF No. 36 in 7:19-CR-25. On March 1, 2022, Vaughn was sentenced in 7:19-CR-25 to a term of 168 months with credit for time served since September 4, 2018, to be followed by a 5-year term of supervised release. J., ECF No. 79 in 7:19-CR-25. In the revocation case, 7:10-CR-17, he was

2

sentenced to a term of 30 months, to run consecutively to the 168-month sentence assessed in 7:19-CR-25, also with credit for time served since September 4, 2018. Am. J., ECF No. 111 in 7:10-CR-17. Vaughn currently is housed at Federal Correctional Institution Jessup and has a projected release date of December 9, 2031.[2]

Vaughn seeks compassionate release based on his mother's health, his own health, and his desire to be present in his young grandson's life. Mots., ECF Nos. 112, 117 in 7:10-CR-17; ECF Nos. 81, 86 in 7:19-CR-25. The government counters that none of the grounds he raises constitute extraordinary and compelling reasons warranting compassionate release. Resp., ECF No. 119 in 7:10-CR-17; ECF No. 88 in 7:19-CR-25.

## II. Compassionate Release

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Stephen Cornell Vaughn") (last viewed Nov. 25, 2024).

Accordingly, Vaughn's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. On September 12, 2023, Vaughn submitted a request to prison staff asking for compassionate release based on his mother's health. Letter, ECF No. 117-3 in 7:10-CR-17; ECF No. 86-3 in 7:19-CR-25. His request was denied on September 27, 2023, ECF No. 117-4 in 7:10-CR-17; ECF No. 86-4 in 7:19-CR-25, and Vaughn filed his amended motion for compassionate release on October 9, 2023. Although Vaughn did not wait 30 days before filing his amended motion, the government did not raise exhaustion as a defense and thus waived any argument regarding exhaustion. See Muhammad, 16 F.4th at 129–130 (concluding that the requirement that a prisoner ask the Bureau of Prisons to file a motion for compassionate release and then wait 30 days before filing his motion is a non-jurisdictional claims-processing rule subject to waiver). Accordingly, the court finds that Vaughn satisfied the exhaustion requirement.

The court next must consider whether it should reduce the term of imprisonment. Effective November 1, 2023, the United States Sentencing Commission amended the policy

4

statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023) (USSG or guidelines). The revised policy statement will be applied to Vaughn's motion.

### A. Vaughn's Health Condition

Vaughn first contends that he is entitled to compassionate release because he has a "potential medical condition" which has not been adequately diagnosed by the BOP. Am. Mot., ECF No. 117 at 5–7 in 7:10-CR-17; ECF No. 86 at 5–7 in 7:19-CR-25. Medical records provided by Vaughn show that in February 2023, blood work revealed abnormally high levels of AST and ALT.[3] A normal range for ALT is 9–46 U/L and Vaughn's level was 52. A normal range for AST is 10–40 U/L and Vaughn's level was 132. Med. R.s, ECF No. 117-2 at 56 in 7:10-CR-17; ECF No. 86-2 at 56 in 7:19-CR-25. Vaughn was referred to the emergency room at a non-prison hospital because of the elevated levels. Upon admission, he had no complaints, no abdominal tenderness, and his vitals were stable. At the hospital, his blood work continued to show abnormal results, with his AST level being 279 and his ALT being 109. His other lab results were within normal limits and an abdominal ultrasound showed no acute findings. Vaughn was discharged and told to follow up with his primary care physician and a gastroenterologist. Med. R.s, ECF No. 117-2 at 60–66 in 7:10-CR-17; ECF No. 86-2 at 60–66 in 7:19-CR-25.

---

[3] Alanine transaminase (ALT) is an enzyme found in the liver that helps convert proteins into energy for the liver cells. When the liver is damaged, ALT is released into the bloodstream and levels increase. Aspertate transaminase (AST) is an enzyme that helps the body break down amino acids. An increase in AST levels may mean liver damage, liver disease, or muscle damage. https://www.mayoclinic.org/tests-procedures/liver-function-tests/about/pac-20394595 (last viewed Dec. 2, 2024).

In April 2023, Vaughn's blood work was repeated, and his AST and ALT results were within normal limits. Med. R.s, ECF No. 117-2 at 53; ECF No. 86-2 at 53. In May 2023, Vaughn asked to be seen by a gastroenterologist because he was in pain and did not want his condition to worsen. He received a reply telling him that his consult had been scheduled and to be patient. He was advised to report to sick call with any worsening symptoms. Request, ECF No. 117-2 at 58–59 in 7:10-CR-17; ECF No. 86-2 at 58–59 in 7:19-CR-25. There is no indication that Vaughn sought medical attention between May and the end of August 2023.

On September 1, 2023, Vaughn reported to a nurse that he had been having bad "abdominal pain at night for months." An examination of his abdomen was normal, as were his heart and lung sounds. His gait was normal and he had no pain at the time of the exam. Vaughn was advised to follow-up with his provider and to return to the clinic for an increase in pain, fever, or chills. An appointment was made for him to talk to a mid-level provider on September 13, 2023, but Vaughn did not show up for the appointment. Med. R.s, ECF No. 117-2 at 1–3; ECF No. 86-2 at 1–3.

A defendant may show an extraordinary and compelling reason for a sentence reduction based on medical circumstances when he can demonstrate the following:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,

> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

USSG § 1B1.13(b)(1)(A)–(C).

Vaughn cannot make this showing based on the medical records he submitted. While he did have abnormally high AST and ALT levels in February 2023, the levels were normal in April 2023. And while he complained on September 1, 2023, of having severe abdominal pain over a period of months, his exam was unremarkable and he did not attend an appointment with a mid-level medical care provider scheduled for twelve days later. Vaughn has not submitted any recent medical records to show either that he continues to have abnormal blood work, or that he continues to suffer severe pain.

Moreover, Vaughn has made no showing that any serious medical condition with which he may be diagnosed has substantially diminished his ability to provide self-care while in prison. While "self-care" is not defined in the policy statement, courts that have examined the issue have required petitioners to show a high level of disability.[4] For example, in United States

---

[4] BOP Program Statement 5050.50 addresses compassionate release for inmates who have suffered a debilitating injury from which they will not recover. The BOP considers release if the inmate is completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to bed or chair; or is capable of only limited self-care and is confined to a bed or chair more than fifty percent of waking hours. BOP review also considers any cognitive deficits of the inmate although a cognitive deficit is not required in cases of severe

7

v. Handy, No. PJM 04-0559, 2020 WL 2041666 (D. Md. April 28, 2020), a district court found that an inmate was unable to provide self-care when he could not walk and was confined to a wheelchair or bed twenty-four hours per day, needed help breaking his food into small pieces, fetching a meal tray, opening packaging, and clipping his toenails due to his right hand being "completely deformed. Id. at *4 (internal citations omitted). Conversely, in United States v. Mattingley, No. 6:15-cr-00005, 2020 WL 974874 (W.D. Va. Feb. 28, 2020), the court found that a double amputee who required the use of prosthetics to ambulate and who also suffered from phantom pain, a propensity for infection, diabetes, kidney disease, and high blood pressure had not shown that he could no longer provide self-care. Id. at *1, 5. In United States v. Coleman, No. 3:17-cr-8, 2020 WL 5016967 at *3 (W.D. Va. Aug. 18, 2020), the court found that an inmate with vision loss due to uveitis who could not climb stairs and was limited to a lower bunk did not show his condition was so severe that he could not provide himself with self-care. Similarly, in United States v. Casey, No. 1:06-CR-00071, 2019 WL 1987311, at *1 (W.D. Va. May 6, 2019), the court determined that the defendant's limited mobility and inability to climb stairs did not suffice to show to he was unable to engage in self-care. See also United States v. Clark, No. 3:13-CR-163-FDW-1, 2019 WL 1052020, at *1 (W.D.N.C. Mar. 5, 2019) ("declining health, diabetes, stage-3 kidney failure, and back issues that require a walker" did not compromise ability to provide self-care). Nothing in the records that Vaughn submitted indicate that he is unable to provide self-care.

---

physical impairment but may be a factor when considering the inmate's ability or inability to reoffend. While the program statement is not binding on the courts, it indicates the severity of a disability that the BOP finds necessary before considering an inmate eligible for compassionate release.

8

Vaughn also asserts that he may have a serious medical condition that requires long-term or specialized medical care that is not being provided, based on his elevated liver enzymes in February 2023 and his complaints of abdominal pain in September 2023. However, Vaughn did not attend his scheduled appointment with a mid-level medical provider and has not submitted any medical information indicating that he is suffering from a serious medical condition. Vaughn bears the burden of showing that he is entitled to a sentence reduction based on medical circumstances and he has not met that burden. Accordingly, his motion for compassionate release based on his allegation of serious health issues is **DENIED**.

### B. Caring for Mother

Vaughn also claims that he is entitled to compassionate release based on his mother's poor health and the fact that she has no one else to care for her. Under the revised guidelines, to demonstrate an extraordinary and compelling reason for a sentence reduction based on family circumstances a defendant must show the following:

> **(3) Family Circumstances of the Defendant.—**
>
> **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> **(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> **(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an

9

> immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

USSG § 1B1.13(b)(3).

Vaughn asserts that his mother is experiencing rapidly deteriorating eyesight and also has a heart condition and high blood pressure. Medical records indicate that Vaughn's mother is 63 years old and is being treated by an ophthalmologist for uveitis[5] in both eyes and cystoid macular edema[6] in her right eye. She is treated with injections and eye drops. She also has had cataract surgery in both eyes. Med. R.s, ECF No. 117-9 in 7:10-CR-17; ECF No. 86-9 in 7:19-CR-25. Vaughn's mother cannot see to drive at night and has issues with depth perception. Notes, ECF No. 117-5 in 7:10-CR-17; ECF No. 86-5 in 7:19-CR-25. His mother needs help with getting to medical appointments and preparing food. Letter, ECF No. 117-6 in 7:10-CR-17; ECF No. 86-6 in 7:19-CR-25.

Prior to the issuance of the revised policy statement, there was no specific provision for compassionate release in the context of a need to care for an incapacitated parent. However, in limited circumstances, courts found that a defendant had shown an

---

[5] Uveitis is a form of eye inflammation that affects the uvea, which is the middle layer of tissue in the eye wall. Symptoms of uveitis can include redness, pain, and blurred vision and can lead to permanent vision loss. Treatment can include anti-inflammatory eyedrops and corticosteroid injections in or around the eye, or oral corticosteroid tablets. https://www.mayoclinic.org/diseases-conditions/uveitis/diagnosis-treatment/drc-20378739 (last viewed Dec. 2, 2024).

[6] Cystoid macular edema (CME) is an eye condition that affects part of the retina. The macula becomes swollen and tiny blisters of fluid form that look like small cysts. Symptoms of CME include distorted central vision, which causes things to appear wavy or blurry, and sometimes causes things to appear dark, dim, or a different color than they really are. CME is treated with eye drops to reduce swelling, injections of medication in the eye, and occasionally surgery. https://www.aao.org/eye-health/diseases/cme-cystoid-macular-edema (last viewed Dec. 2, 2004).

extraordinary and compelling circumstance based on the need to care for a parent who has become incapacitated. For example, in United States v. Hicklin, No. 6:16-cr-2, 2020 WL 7406791, at *3 (W.D. Va. Dec. 11, 2020), the court found that a defendant showed an extraordinary and compelling circumstance warranting compassionate release where he was the only possible caretaker for his mother who had severe medical issues and who herself took care of a disabled adult daughter. The defendant's mother was 70 years old, and had osteoporosis, Parkinson's disease, a balance disorder, spondylolisthesis, chronic back pain, a history of stroke, and gait dysfunction. Id. at *3. She needed assistance for light housekeeping and getting out of the bathtub, and she used a rollator when she left the house. Id. at 2.

Similarly, in United States v. Bucci, 409 F.Supp.3d 1, 2 (D. Mass. 2019), the court granted compassionate release upon a finding that the defendant was the only available caregiver for his ailing mother. See also United States v. Hernandez, No. 16-20091-CR-Williams, 2020 WL 4343991 (S.D. Fla. April 3, 2020) (granting compassionate release when defendant showed he was the only potential caregiver for his mother who had cancer, was functionally blind, and had mobility limitations), and United States v. Walker, No. 1:11 CR 270, 2019 WL 5268751, at *2 (N.D. Ohio Oct. 17, 2019) (granting compassionate release to defendant who provided undisputed evidence to the court of his mother's serious illness, along with a showing that he had an unusual and lucrative job opportunity and was scheduled for release to a halfway house within three months).

The court is sympathetic to Vaughn's desire to care for his mother, but the evidence submitted does not show that her medical conditions are so dire that she has become incapacitated. The medical evidence shows that Vaughn's mother has trouble with her vision

11

but can still drive during the day. She states that she would like some help with everyday needs like food preparation, but nothing in the record indicates that she is unable to do these things or is otherwise unable to attend to her activities of daily living.

Nor has Vaughn provided evidence that he is the only available caregiver for his mother. He states in a conclusory fashion that his mother's other son is unable to assist her because he lives in North Carolina and that she is estranged from her daughter. Am. Mot., ECF No. 117 at 5 in 7:10-CR-17; ECF No. 86 at 5 in 7:19-CR-25. However, in the Pre-Sentence Investigation Report (PSR) prepared in 2021, Vaughn reported having two brothers, one of whom resided in Roanoke and one of whom was incarcerated but scheduled to be released in 2022. ECF No. 67 ¶ 78 in 7:19-CR-25. No explanation was given as to why the brother who was living in Roanoke could not help his mother. Nor was any explanation provided for why the brother living in North Carolina could not move to Roanoke to care for his mother.

On the record before it, the court cannot conclude that Vaughn has shown that his mother's health presents an extraordinary and compelling reason warranting compassionate release. His mother appears to have some vision and mobility problems, and while she might very well benefit from some help, nothing in the evidence presented indicates that she is incapacitated. See United States v. Crisp, No. 1:11-cr-00026-JLT-1, 2022 WL 3448307, at *2 (E.D. Cal. Aug. 17, 2022) ("If a sick parent—absent truly extraordinary circumstances—was considered a compelling reason, virtually any inmate seeking a sentence reduction on this ground could produce one."); United States v. Ingram, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (noting that the need to care for an elderly parent was not

12

extraordinary because "[m]any, if not all inmates, have aging and sick parents.") Nor has Vaughn met his burden of showing that he is his mother's only available caregiver. Accordingly, Vaughn's motion for compassionate release based on his mother's health issues is **DENIED**.

As Vaughn has not shown an extraordinary and compelling reason for compassionate release, the court will not address the § 3553(a) factors. See United States v. Bethea, 54 F.4th 826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.")

### III. Conclusion

For the reasons stated herein, the court **DENIES** Vaughn's motions for compassionate release, ECF Nos. 112, 117 in 7:10-CR-17; ECF Nos. 81, 86 in 7:19-CR-25.

An appropriate order will be issued.

It is so **ORDERED**.

Entered: January 10, 2025

Michael F. Urbanski
Senior United States District Judge